UNITED STATES v. NEVIN et al. SAME v. APPEL et al.

SAME v. OPPENHEIM.

(District Court, D. Colorado. September 26, 1912.)

Nos. 2,584, 2,585, 2,592.

1. CRIMINAL LAW (§ 280*)—PLEA IN ABATEMENT—SUFFICIENCY—IRREGULARITIES AS TO GRAND JURY.

A plea in abatement in a criminal case on the ground of irregularities in the constitution of the grand jury, to be good, must allege facts showing that defendant was prejudiced thereby.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 645–651; Dec. Dig. § 280.*]

2. GRAND JURY (§ 8*)—MANNER OF SELECTING JURORS.

That some members of a grand jury were by order of the court summoned by the marshal from the body of the district, without the drawing of names, is not such an irregularity as will affect the validity of an indictment, where such members were duly qualified.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 16–20; Dec. Dig. § 8.*]

3. GRAND JURY (§ 9*)—ADDITIONS TO PANEL.

That the court directed the summoning of additional grand jurors, although there were a sufficient number impaneled and sworn at the time to constitute a legal grand jury, is not an objection to the legality of the panel.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 21–26; Dec. Dig. § 9.*]

4. CRIMINAL LAW (§ 284*)—OBJECTIONS—REVIEW OF EVIDENCE BEFORE GRAND JURY.

The court in a criminal case will not inquire into the evidence before the grand jury, to ascertain whether it was all competent or sufficient to warrant the indictment, and especially on a plea verified on information and belief only.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 655; Dec. Dig. § 284.*

Review by trial court of evidence given by grand jury, see note to McGregor v. United States, 69 C. C. A. 488.]

Prosecutions by the United States against Deweese C. Nevin and others, against Jacob S. Appel and others, and against William Oppenheim. On demurrer to pleas in abatement. Sustained.

Fred A. Maynard, Sp. Asst. Atty. Gen., for the United States.

E. M. Cranston and W. M. Downing, both of Denver, Colo., for defendants Nevin et al.

T. J. O'Donnell and J. E. Robinson, both of Denver, Colo., for defendants Appel et al.

Edw. C. Stimson, of Denver, Colo., for defendant Oppenheim.

LEWIS, District Judge. To indictments found and returned by the grand jury at the November, 1911, term, the defendants in each of these cases have filed pleas in abatement. Each of the pleas makes objection to the manner of selecting five of the grand jurors. The facts in that respect, as disclosed by the record (copied into the Op-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

penheim plea), are these: The grand jury, consisting of eighteen members, was regularly impaneled, sworn and charged on the 7th of that month; after it had progressed with its labors two of the grand jurors were finally excused, and thereafter and on November 22d, Grand Juror Straub was reported and by the court found to be "ill and unable to constantly attend the further consideration at all times of all matters to be presented to the grand jury"; it was further made to appear that all cases which had been presented to the grand jury up to that time had been concluded and finished, but that there were other matters for consideration by the grand jury. The reason for not finally excusing Juror Straub was that the grand jury had not made report on investigations which it had concluded, and it could not do so at that time on account of the inability of said Straub to be present in court; and it was considered advisable, if not necessary, that at least sixteen grand jurors who had participated in investigations make report thereof. For that reason said Straub was retained as a member of the body in order that he might, if possible, act with his fifteen fellow members in making report on their prior investigations. And under these conditions the court, on November 22d, ordered that a special venire facias issue to the marshal of the district commanding him that he summon five good and lawful men from the body of the district, and not from bystanders, that they attend the court and serve as grand jurors until discharged, said venire being made returnable on the following day. Under the marshal's return five men came into court in obedience to the writ and were then and there sworn and charged as grand jurors and placed upon the panel with the fifteen remaining jurors, Straub being still absent. Juror Straub, not having been finally excused, returned and acted as a grand juror with the other twenty on December 22d, on which day final report was made and the grand jury was discharged. The pleas allege that investigation of and action on these cases was taken after November 23d, when the five additional persons had been added to the body. It is contended that the court was without power to add members to the body while it was still composed of sixteen (Straub not being discharged), and also that the court was without power to make the order for an open venire, but should have first ascertained and fixed the persons to be called in by drawing that number of names from the box. It is claimed, for defendants, that the body, after the five persons thus drawn had been added, did not constitute a grand jury and was without authority to find and present these indictments.

None of the pleas charges that any of the five persons thus added were disqualified to act as grand jurors, nor sets forth any facts disclosing that said five persons, or other members of that body, were prejudiced or in any manner unfit as grand jurors to act in these cases.

The plea of the defendants in case 2,585 adds an additional ground. It alleges that two of the defendants in that case were officers of the J. S. Appel Suit & Cloak Company, a corporation, adjudged a bankrupt on November 14, 1911; and that thereafter said two defendants were required to appear before the referee and give testimony

in said bankruptcy proceeding; that attorneys for creditors of said bankrupt, who heard said testimony given before the referee, appeared before the grand jury as witnesses and disclosed to said body the testimony of said two defendants before said referee; that said grand jury considered the same and would not have found and returned the bill in case 2,585 but for said disclosure. This plea also alleges that nine other named witnesses were sworn and examined in the investigation which resulted in the finding of this indictment, but it charges that each of said nine witnesses gave illegal evidence before the grand jury, in that, neither of "said witnesses had or claimed to have any personal knowledge of anything in the said supposed indictment alleged as a matter of fact, and that the testimony of the said several witnesses, and each of them, was hearsay only, all of which will appear from an inspection of the minutes of the said supposed grand jury."

To each plea the prosecution has demurred.

[1] I. There is serious doubt whether any of the pleas in so far as they challenge the placing of the five additional men on the grand jury, is good in substance. Neither of them alleges facts showing disqualification or prejudice on the part of the five added or any members of that body. On considering the sufficiency of such a plea it is said, in Agnew v. U. S., 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624:

"Another general rule is that for such irregularities as do not prejudice the defendant he has no cause of complaint, and can take no exception. U. S. v. Richardson (C. C.) 28 Fed. 65; U. S. v. Reed, 2 Blatchf. 456, Fed. Cas. No. 16,134; U. S. v. Tallman, 10 Blatchf. 21, Fed. Cas. No. 16,429; State v. Mellor, 13 R. I. 666; Cox v. People, 80 N. Y. 500; People v. Petrea, 92 N. Y. 128. * * * And, moreover, the plea is fatally defective in that, although it is stated that the drawing 'tended to his injury and prejudice,' no grounds whatever are assigned for such a conclusion, nor does the record exhibit any such."

On a demurrer to a like plea Judge Bellinger, in U. S. v. Mitchell (C. C.) 136 Fed. 896, 907, uses this language:

"Instead of conclusions and opinions, there must be something tangible, justifying a presumption of injury to the defendant in a substantial right, before the court will interfere."

In U. S. v. Benson (C. C.) 31 Fed. 896, it appeared from the plea that some of the grand jurors were not "assessed on the last assessment roll of his county, on property belonging to him," a qualification required by the state statute (Code Civ. Proc. § 198); but it did not appear from the plea that such jurors were otherwise unfit or in any manner prejudiced. Mr. Justice Field, who sat in the case with Circuit Judge Sawyer and District Judge Hoffman, expressed the view that this was an irregularity only and cured by the statute of jeofailes (section 1025, R. S. U. S. [U. S. Comp. St. 1901, p. 720]), and added:

"The apprehensions, therefore, of one of the learned counsel as to the fearful consequences which may follow in other cases if the indictment be sus-

tained in this case in the face of his objections, may be considered with composure, and dismissed."

See also Lowdon v. U. S., 149 Fed. 673, 79 C. C. A. 361; U. S. v. Am. Tobacco Co. (D. C.) 177 Fed. 774, 780.

[2] II. The objection taken to the calling of the five additional jurors while the number then in the panel had not been permanently reduced to less than sixteen, embodies two propositions, first, that the court was without authority to select or cause the marshal to select the persons to be added in any other manner than to first draw their names from the box, and second, the court was without power to add additional grand jurors while that body was composed of sixteen members.

The first proposition is foreclosed against the plea by U. S. v. Eagan (C. C.) 30 Fed. 608. Mr. Justice Brewer expressed himself on the proposition thus:

"But it is insisted there was an irregularity in the organization of this grand jury, in that five of the jurors were not drawn in the manner provided by the act of 1879. But a challenge to a grand jury, based on the mere ground of irregularity in its organization, was never regarded with any favor; less so to-day than ever, * * * so that I have no doubt that the court has to-day, as it always has had, the power to summon from the bystanders to fill up a petit jury, and to summon from the body of the district, in an emergency, for completing a grand jury."

And Judge Thayer added:

"But this irregularity in choosing the five grand jurors will not avail (after the jury has been sworn, and have found indictments) as ground for quashing the indictment so found, either on plea in abatement or otherwise, when it appears that the jurors so irregularly chosen were competent and qualified jurors, residing in the district, and that the only irregularity consists in the method of selecting them. * * * If the point to be decided by the court was to be determined solely with reference to the common law, and without reference to local laws, the better opinion seems to be that no objection to an indictment ought to be allowed, based merely on an irregularity in the manner of selecting a part or the whole of the grand jury which found the bill, if, in all other respects, they were duly-qualified jurors. Thus, in Thompson and Merriam on Juries, it is said that the only objection which can be taken to the grand jurors by plea in abatement, after they had been sworn and made presentments, 'must be such as would disqualify the juror to serve in any case; in other words, the plea must show the absence of positive qualifications demanded by law,' and not merely an irregularity in the method of selection. Vide Thomp. & M. Juries, §§ 533–536, inclusive, and authorities cited."

[3] On the second proposition,—in Wolfson v. United States, 101 Fed. 430, 432, 41 C. C. A. 422, it appears that twenty-three names were first drawn, from which sixteen grand jurors were selected. At a second drawing ten additional names were added, from which seven more grand jurors were selected and placed on the panel, making a grand jury of twenty-three members. It was objected (a) that the first drawing having furnished a sufficient number (16) to constitute a grand jury, the court was without jurisdiction to add to that number, and (b) the court was without authority to order the second drawing because a sufficient number to constitute a grand jury had been obtained from the first drawing. The objection was overruled, and while the reason given was that the point was not raised in apt time, the court evidently held

the view that the objection was without merit, because it went to an irregularity and did not touch the substantial rights of the defendant to his prejudice.

In State v. Ward, 60 Vt. 142, 14 Atl. 187, it appears that the court discharged one Hoffman from the grand jury and substituted in his place Ellis. It was objected that Ellis was not lawfully summoned, that he was not qualified to serve at that term as a grand juror, that the court had no right to discharge Hoffman from the panel and no right to substitute Ellis. The court, through Ross, Judge, spoke thus to the point:

"In State v. Champeau, 52 Vt. 313 [36 Am. Rep. 754], it is plainly inti- mated, if irregularity enters into the drawing or impaneling of the grand jury, it must be shown to work a wrong or injury, to be available. In State v. Gravelin (Vt.) a petition for a new trial was prosecuted, in which it was shown that a grand juror who acted in finding the indictment, and a petit juror who participated in finding the respondent guilty of murder, were irregularly, and without the authority of law, drawn and summoned from the town of Chester, in that the person who drew and summoned them was a mere volunteer, wholly unauthorized to act in that behalf, and yet the peti- tion was denied; the persons drawn being competent to serve in their re- spective capacities. In Mann v. Fairlee, 44 Vt. 672, the same doctrine was held in regard to summoning a petit juror. It is the duty of the court to order the drawing and summoning of both the petit and grand jurors, and to duly impanel them. This duty imposes on the court a responsibility which calls for the exercise of sound judgment and discretion. It has been gener- ally held that the court charged with the duty of impaneling either the petit or grand jury was clothed with a discretionary power, in furtherance of jus- tice, to excuse a competent juror regularly drawn, and order a talesman called to fill his place, and that the exercise of such discretion is not revisa- ble. * * * If such excuses should not reduce the number of the grand jury below a working quorum, they presumably reduce the strength and effi- ciency of a full panel, which the statute has given for the protection of the accused and of the state,—of the accused if innocent, and of the state if he is guilty. If, the number of the grand jury should be reduced to 12 and the 12 should find or fail to find an indictment, it does not follow that the action of the 12 would be the same if aided by the counsels and deliberations of the other 6 required by the statute. To secure the full rights of the accused and of the state a full panel of the grand jury should be secured when possible."

In People v. Lauder, 82 Mich. 109, 46 N. W. 956, it appeared that a grand jury composed of twenty members was impaneled, sworn and charged, and began its labors. On order of the court, made at the request of the prosecuting attorney, three additional names were drawn as grand jurors, the object being to obtain from the box the name of Charles Flowers, a stenographer, who might act as one of the grand jurors and at the same time take the evi- dence. His name was drawn as one of the three and he was added, but the other two were omitted from the panel. The entire court agreed with the opinion of Morse, Judge, on this point. At page 130 of 82 Mich., and page 962 of 46 N. W., he uses this language:

"As the record appears before us, it must be conceded that the three addi- tional names were ordered to be drawn after the 20 men had been sworn and charged and organized as a grand jury; and that the object of drawing these names was to obtain, if possible, the summoning of Charles Flowers as a juror, that he might also act as a stenographer. That he did so act, under the promise of extra pay by the board of county auditors must be also con- ceded. * * * 82 Mich. 136, 46 N. W. 964. It is manifestly in the dis-

cretion of the court, under our statutes, to impanel a grand jury of any number of men not more than 23 or less than 16. If, after the jury had been impaneled and sworn with 20 members, the court had seen fit to add more thereto, and had forbidden the 20 to do any business until the others were drawn and summoned, and, after such others appeared and were accepted, had called the 20 in, and, adding the others, had sworn and charged them over again, there certainly could have been no cause of complaint; or, if a person drawn and summoned before the 20 were sworn, but, failing to appear until afterwards, had been, on appearance, sworn and sent to the jury-room to join his fellows, this would not have invalidated the panel, or have been a cause for quashing an indictment found by the grand jury as so constituted. * * * So we think that, in its discretion, the court may increase the number of grand jurors, after they are sworn and charged, to any number not more than 23, if the exigencies of justice require it in the opinion of the court. Such discretion could not be used to the disadvantage or persecution of any accused person, as this would manifestly be an abuse of discretion; and, if, as suggested by a member of this court upon the hearing, such addition was made for the purpose of procuring votes enough to find an indictment against any person who could not be indicted without such addition, such indictment would not be permitted to stand. In this case, the addition was made for the purpose of securing a juror who was a stenographer."

[4] III. As to the second ground of the plea in the Appel case, wherein complaint is made of the character and sufficiency of the proof on which the grand jury acted, we first observe that the verification of the plea is merely upon information and belief. To permit an investigation as to character or sufficiency of proof before a grand jury under a plea so verified would open the door to abuse and an intolerable practice. It would be an invitation to every defendant to thus uncover, before trial, the proof against him and would be an ever present means for delay. We next observe that the plea does not set forth the evidence given by the nine other witnesses, nor its substance. All it says in that regard is that they did not testify of their knowledge of the facts, did not know the facts, their testimony was hearsay and the minutes kept by the grand jury will so show. Much of this is mere opinion and conclusion. Neither is it claimed in the plea that the minutes of the grand jury contain all of the testimony given by said nine witnesses, nor does it clearly appear whether the claim in that respect is that the testimony of all of said nine witnesses was hearsay in fact or that by the minutes it appears that their testimony was not of their own knowledge. But waiving these objections, the plea in this respect does not tender an issue that can be investigated. Holt v. U. S., 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138.

In U. S. v. Cobban (C. C.) 127 Fed. 713, Judge Beatty, at page 720, adopts the language of Mr. Justice Nelson in U. S. v. Reed, 2 Blatchf. 435, Fed. Cas. No. 16,134:

" 'No case has been cited, nor have we been able to find any, furnishing authority for looking into and revising the judgment of the grand jury upon the evidence for the purpose of determining whether or not the finding was founded upon sufficient proof.' "

And Judge Beatty added:

"And, further, that it was contrary to the policy of the law to try the question whether the grand jury had sufficient or any evidence to warrant their finding."

In U. S. v. Brown, 1 Sawy. 533, Fed. Cas. No. 14,671, the same inquiry as to the competency of the evidence produced before the grand jury was attempted to be raised under motions to quash. It is said:

"This being so, the affidavits of the defendants impugning the conduct and judgment of the grand jury, can not be considered upon the hearing of this motion. If the contrary practice were established, there would be no need of grand juries, and the court would necessarily assume both the function of indicting and trying criminals; for it is safe to presume that in most cases the defendant would object to being tried upon the indictment, and support such objection by his affidavit that he believed the grand jury acted upon incompetent or insufficient evidence. The wit of man could not devise a mode of indicting which would not be liable to this objection from the defendant. In the administration of criminal justice, confidence must be reposed somewhere; and it must be admitted that there are few bodies concerned in it, that may be more safely trusted than the grand juries of this district. The material allegation of each of these affidavits, that the affiant believes the grand jury acted upon his evidence in finding the indictment against himself and co-defendant, is quite as likely to be false as true, because the affiant has no means of knowing the fact."

Judge Rapallo, speaking to this point in Hope v. People, 83 N. Y. 418. 38 Am. Rep. 460, says:

"We find no authority for the position that the sufficiency of the evidence upon which an indictment is found by the grand jury is a question which can be raised by plea to the indictment, or that the reception of incompetent or irrelevant evidence by the grand jury can be pleaded."

Kingsbury v. State, 37 Tex. Cr. R. 259, 39 S. W. 365 (Texas Court of Criminal Appeals):

"This court has held that the indictment will not be quashed or set aside because the grand jury had no evidence before them authorizing the presentation of the bill, and that this matter of evidence vel non will not be inquired into."

State v. Dayton, 23 N. J. Law, 49, 56, 53 Am. Dec. 270:

"But conceding that the proposition is fully established, that there was not legal and competent evidence before the grand jury, does that afford the subject matter to sustain either a motion to quash or a plea in abatement? We are clearly of opinion, that in this state, at least, it does not. If the position be sound that every indictment not found upon the production of legal and competent evidence before the jury is essentially vicious, it follows that in all cases where the witnesses produced before the grand jury are from any cause legally disqualified or incompetent to testify, or where any essential link in the chain of testimony is sustained by evidence not in itself legal, the indictment can not be sustained, although there be ample competent testimony, not produced before the grand jury, to sustain the charges of the indictment."

See, also, U. S. v. Terry (D. C.) 39 Fed. 355; U. S. v. Jones (D. C.) 69 Fed. 973, 978–979; State v. Boyd, 2 Hill (S. C.) 288, 27 Am. Dec. 376; Creek v. State, 24 Ind. 153; State v. Tucker, 20 Iowa, 508; State v. Logan, 1 Nev. 509.

But since the formulation of these views, the case of McKinney v. U. S., 199 Fed. 25 (Eighth Circuit Court of Appeals), has come to hand, the opinion therein being filed July 22d, last. That opinion alone requires us to decide this question against the defendants. Judge Hook, for the majority, says:

"Some courts have held rather broadly that it is proper for a trial court to go behind an indictment and inquire into the character of the evidence

upon which the grand jury acted. United States v. Farrington (D. C.) 5 Fed. 343; United States v. Kilpatrick (D. C.) 16 Fed. 765; Royce v. Oklahoma, 5 Okl. 61, 47 Pac. 1083. Other courts have taken the contrary view. United States v. Reed, 2 Blatchf. 435, Fed. Cas. No. 16,134; United States v. Brown, 1 Sawy. 531, Fed. Cas. No. 14,671; United States v. Terry (D. C.) 39 Fed. 355; United States v. Jones (D. C.) 69 Fed. 973; United States v. Cobban (C. C.) 127 Fed. 713. We think the latter is the better rule, though doubtless in extreme instances a court may do what is needful to prevent clear injustice or an abuse of judicial process. This qualification, however, is far from a recognition of the right of a defendant to compel a review of the evidence upon which he was indicted."

These views render it unnecessary to consider whether the testimony of defendants Appel and Hasbach, given before the Referee and disclosed to the grand jury, as claimed in the plea, was competent and admissible proof before that body.

The demurrers to the pleas in each case will, therefore, be sustained. and the defendants in each case required to plead to the general issue.

It is so ordered.